Mrs. Taylor Foundation v. ConverysProselect Insurance Company Morning, Your Honors. Hold just a moment and let's get your co-counsel. Oh, I apologize. Your opposing counsel, get themselves set. Okay, looks like they're ready. Please proceed. Thank you, Your Honor. Good morning again. My name is Kelly Hadley. I'm here on behalf of the appellants, Moses Taylor Foundation, on behalf of Moses Taylor Hospital. I believe I reserved three minutes for rebuttal. That's acceptable. Thank you. Counsel, let me ask you a question to begin. Sure. Why did you not seek or sue to require that the defendant give you coverage for the remaining 1.75 that you say they should have left on the table, requiring them to give you claims-made coverage? That would satisfy you, would it not? Your Honor, I think the reason we did not go with, and I believe you're talking about like a deck action, asking for coverage rather than bad faith, is because we wanted to sue under the bad faith statute, which I believe would require then the specific performance of reinstating the aggregate. I'm not understanding that. Would you say that again? Sure. If you brought it under the bad faith statute, you couldn't have sought them to give you the amount of money it would cost for you to buy coverage? It certainly could have given us the amount of money to purchase coverage, sure, but that's not what we're seeking here. We're just seeking the reinstatement of the coverage. You're seeking money? You're asking for dollars? Not actually, Your Honor, and respectfully I would say we are not seeking dollars in our pocket. We are seeking the reinstatement of the aggregate. So we're just seeking that that money not comes to us, not be received by a check that would go into the pocket of the appellant, simply that the aggregate insurance policy be reinstated to what we believe it should have been had it not been for the bad faith and breach of contract of the appellees. So you're asking for specific performance? Essentially, yes, Your Honor. So in effect, are you asking for the same thing as Judge Rendell has suggested, that you could have asked for a declaration that they were obligated to maintain the coverage at the level they'd had it before? I believe so. I think it has the same effect, although we didn't pursue it by means of a DEC action. Did you seek damages to go into the market and get alternative coverage? We did not, Your Honor. The only damages sought, I mean, we did seek damages in terms of attorney's fees and punitive damages, but the only compensatory damage sought, so to speak, is simply the reinstatement of the aggregate, which we believe was depleted. Were you under any obligation to mitigate damage by going to the market and then seeking that money? I think there's always an obligation to mitigate damage. I think right now we're in a position where we have to go into the market and seek additional coverage because of the position which we've been left. I think that changes depending on the outcome of the argument today of whether or not we have to seek additional coverage. But like I said, I believe there's always a duty to mitigate, but we believe the appropriate remedy in this case would simply be reinstating the coverage that was depleted. What does your claim for relief in your amended complaint state? I could read it to you specifically if you'd like, Your Honor, but it seeks exactly that, the reinstatement of $1,750,000 that we believe was depleted from the aggregate due to the actions or, in this case, inactions of the defendants. Reinstatement. Does that mean you want that in cash? We do not want it in cash. We simply want the policy to be what's left in the policy, and there's a certain amount left in our aggregate coverage. We're seeking that it be increased by $1,750,000. I'd like to add, Your Honor, that that is not the original amount. We're not seeking anything but what we feel the bad faith of the defendants have depleted from that aggregate. The district court said that diminishment of this coverage was speculative. They did, Your Honor, and that's what I think this whole appeal is about, and we disagree with that. And I think if you look to any of the cases that we cited in our brief, and I think it was essentially, we didn't say to this case in our brief, but it was essentially come up in the PASHAK case, P-A-S-H-A-K. The courts look to see what defines a speculative damage. Wait. If you're citing a new case for us, and it sounds like you are, you want to give us that case citation? I will, Your Honor. Thank you. And the same site comes up multiple times in other cases that were cited, but let me give you this one as well. It's PASHAK, P-A-S-H-A-K, versus Barish, B-A-R-I-S-H, and the site is 303 PASuper559. PASuper what? 559, and it's a 1982 decision. And what does it say that's significant? It actually says what cases that we did cite on the Freddie case, Freddie versus, or Wachovia Bank, excuse me, versus Freddie in the Rizzo case, in the Liberty Bank case, it really tests whether damages are speculative or not. And the first question is a basic question of whether or not there are identifiable damages, which we believe in this case there are. There's been a diminution in the amount of protection that's afforded to us under our insurance policy. The second part of that test, so to speak, says that damages are speculative only if the uncertainty concerns the fact of damages rather than the amount of damages. And I don't think that second part really applies to this case at all because there's no uncertainty whether it be to fact or to damage. The fact is there were damages, there was loss, but there's also no uncertainty even with the amount of losses. We've stated that specifically in our complaint. And that's, again, what we're seeking, just the reinstatement. Nothing to do with future cases as Appelli's brief and their initial motion to dismiss suggests that we're seeking speculative damages because it's wholly dependent on the outcome of future medical malpractice claims. That's not the case here. Although certainly future medical malpractice claims will have some impact on my client should the insurance remain where it is, should the district court's order be affirmed. But that's not what we're asking for. We're not asking for anything having to do with future damages in medical malpractice claims. Well, speak to this assertion by the district court. First, the court lays out the basic terms for a contract action under Pennsylvania law. And then says, to evaluate whether damages or speculative claims may not prove a precise amount but must instead show that there are identifiable damages. And then the court goes on to say you haven't identified any damages because it's all just in the air whether you're going to ever face a consequence from a diminution in your coverage. Go ahead and respond to that directly. Sure. And I think, Judge, what you just said was very important. Face a consequence as a result of the diminution in coverage. That's not what we're saying is the damage here. We're saying the diminution in coverage is the damage. Not the result of that, but the fact that it happened. And I think that's exactly what the district court was saying as well.  And that's the only damage that we're pleading here. They were looking at the results after the fact. But the reality is we paid for coverage, we contracted for coverage, albeit insurance is prospective in nature, so it's dependent on future damage. It's dependent on a future claim of some sort. But what we did in this case was contract for coverage, and that coverage is gone. Well, when you say it's dependent on something in the future, that surprises me a little bit because I thought your position was, now I understood your briefing and what you've said right up until now, I thought your position was we purchased a hedge against risk, and that's a present benefit. That's not some future thing. That's something people go out in the market and get all the time. They want risk protection and they buy risk protection, and it is the risk protection itself, which is the good, and that good, and we were deprived of that good. That's not a, have I misunderstood your argument? No, and that's exactly what my argument was, and I'm sorry if I misstated, Your Honor, but what I was saying is insurance by its nature, the use of that insurance is dependent on a future harm. So anytime, like you just said, you're taking risk into account and that's why you're purchasing the insurance, but it's to be used against future events. That's the purpose of buying insurance. So I apologize if I misspoke, but what you just reiterated is our exact position. All right. I know the second part of our argument as well has to do with our constitutional right to remedy, and it gets into really the statute of limitations argument that we put forth in our brief, and I think that's very important in this case. Right now, we feel that there are identifiable damages. We feel that's unquestionable. We feel that we provided an appropriate claim within the amended complaint for breach of contract for bad faith and then for vicarious liability. Before you get into constitutional stuff, why don't you take on their argument under the Wachovia case, that malpractice case? Sure, and the Wachovia case is actually, I think, well, it gets into somewhat the constitutional issue that I'm bringing before the court as it pertains to statute of limitations, but I think that's a very interesting case because it deals with both statute of limitations and whether or not you had identifiable and or speculative damages at the time that the complaint was filed. Now, the Wachovia case, I assume the panel is familiar with the facts of that case, but what happened in that case is exactly what we're trying to avoid here. So Wachovia brings a case against the attorney who had previously represented their predecessor. You're aware of this, and I apologize. But what Wachovia ultimately, what the court said in Wachovia is that they were past the statute of limitations, and Wachovia said that they weren't past the statute of limitations because they were unable to claim identifiable damages until there was a judgment made against it. And the court said that was untrue, that at the time they knew the wrong was done, there was damages in fact, though not in amount. And it goes back to what we've been stating through this entire argument, that we're looking for uncertainty in fact rather than amount. And they're saying that there was no uncertainty in the fact of damages, and as a result, Wachovia was then precluded from bringing their action because the statute of limitations had passed. And that plays right into what we're trying to avoid today by filing this now. If we take into account what the district court has deemed to be actual damages, by the time we get to the point where we can show what the district court has deemed to be actual damages, we're going to be beyond the statute of limitations for the wrongdoing of the defendants. So we're effectively put out of court, which again, I know we're trying not to focus on that constitutional argument, but they're kind of one and the same when you look at in terms of the court's ruling in Peretti, or Wachovia Bank, excuse me. Understood. If there's any other questions? Very good, Judge Randell. Okay. Thank you. Thank you, Your Honor. Good morning. If the court please, my name is Thomas Hurd. I represent the defendant, Covarris and ProSelect Insurance Company. The appellant's claim here is that it might in the future be sued for conduct occurring in 2011 that if such a hypothetical suit is brought, might result in a verdict or settlement exceeding $1.5 million, and if both of those contingencies occur, then it would have $1.75 million less in excess coverage to cover that claim. Well, that's not quite how I understand their claim, Mr. Hurd. I understand their claim to be, we used to have $1.75 million more in coverage, and now we don't, and it's because of the bad faith decisions of your client. Now, since people buy insurance in the market all the time, there's a market for it, it will get it precisely against future events, which are by their very nature contingent. How is it not a present harm to be deprived of the risk protection that you purchased? Because we provided that risk protection, and indeed in this case, made sure, number one, that they would never be subjected to a verdict in excess of their coverage. I thought it was a given that it was undisputed that they have $1.75 million less in excess coverage than they used to have. Is that not true? No, that's correct, because of the payment of a claim under that coverage. Right, and their assertion is that was bad faith, and my understanding was that that was not on the record. I'm not going to argue about whether or not that, in fact, was bad faith, and whether you can make the case that, no, you really aren't entitled to any more than you've got, because what we're arguing about right now is whether, assuming that was bad faith, and that $1.75 million reduction occurred because of your bad faith, they are not entitled to a remedy because they have an actual present damage. That's what I thought we were talking about. Am I correct about that? No, I agree. That is what we're talking about, and what we're talking about is whether they pled a claim for breach of contract, because that's the predicate. Before you get to bad faith, we have to get to that. Well, I don't think you can say before we get to bad faith. Their claim presupposes that there was bad faith, and as a consequence of that, you are in breach of your contract because you reduced their coverage. So that's how I'm looking at it, and I think I'm right about that. If I am right about that, how are they not, in fact, suffering a present harm, a definable, identifiable present harm? That is, we got $1.75 less in coverage than what we purchased and are entitled to. How is that speculative? Because the case law, both the decisions from this circuit in Ware, from the federal court in Jonestown, from the state court cases that we've cited, including Wachovia, say that the damages cannot be speculative or contingent, and in this case, that is exactly what they are, because right now, there are no damages. It doesn't matter. What if you repudiated this contract? What if you just had said to them, we're not covering you. Go away. Would you say, no damages, it's all speculative, because who knows whether you ever would have had a suit? No. I mean, but that's not... Aren't you assuming that they have asked for damages? And your opponent says, we have not asked for damages, we have asked for reinstatement of the coverage. That's not the same as damages. I agree, Your Honor. But it seems to me that asking for reinstatement of the coverage in a breach of contract action is asking for speculative and contingent damages, because right now, it doesn't matter what the amount of that excess coverage is, whether it's reinstated or not, there are currently no damages, because there's no claim. But they want to sleep at night, knowing they have coverage. So there is a real reason for them wanting it reinstated. It means something. It's not money, but it means something to them that they contracted for, to have that, you know, the risk reduced, and knowing that it's there. Isn't that a cognizable remedy? Reinstate it. We're not asking for money. We're asking for coverage. It is not. Whether they might need it or not, well, that's kind of beside the point at this point in time. She wants the factor of being able to sleep at night. You know, it's why I buy, you know, trip insurance. It's not that I know that we're not going to, you know, go take the trip or there's a problem with it. It's that I know that I have it, if I need it. Well, and just to be clear, there is excess coverage. It's just not what they think it should be. We are still providing excess coverage. But it's 1.75 less. I mean, if somebody canceled my trip insurance, and I sued for them to reinstate it, and they say, oh, well, you know, maybe you're going to go on the trip. You don't really need it. You haven't suffered any damage. Well, I suffered the damage that I don't have it anymore. And that, to me, is real. So I think if you're saying, if you're positing that they sued for damages, I think you have a case. But if you agree that they haven't sued for money, then the fact that they haven't suffered a loss in a dollar amount, I don't think, you know, might not matter. Well, they sued for breach of contract, and they sought damages. And there are no damages that exist currently. How about the damages? If they had wanted to put a number on it, why couldn't they have said, this is what it will cost us in the market to go out and get that additional coverage? There's a non-speculative, perfectly rational, worldwide market for insurance. And if we need $1.75 million in excess coverage, this is what it's going to cost us to get it. Why isn't that the value? If they had said we want money damage. Now, we take her at her word when Ms. Hadley says, and in her briefing in here, we're not asking for money. We want the coverage reinstated. But isn't there a real present amount of money that would make them whole, too, if they needed to go into the market? I'm sure you could price that out, yes. But that's not what they asked for. That's not what's in their complaint. Do you disagree with her statement that the claim for relief here is for a reinstatement of the coverage? Do you disagree with that? No, I don't disagree with that. That's my understanding of what they allege the damages are. Well, it's at the end of the complaint. It's pretty easy to see what it says there. And if it says, please reinstate our coverage in this amount, that's what she's asking for. As compared to, please put $1,750,000 aside for us, because that's our damage. So which is it, the first or the second? And I don't have the complaint in front of me. I don't have the complaint in front of me either. I believe it's the former. Right. They've asked for reinstatement of the coverage. So I guess I'm just following up on what Judge Rendell said. I'm a little mystified how that's speculative. It sounds like the argument you're making is really what our client sells is worthless, because insurance has no meaning. Insurance has no meaning. If it's got meaning, if it's a good that's worth having, then if we take it as a given that you have reduced their coverage, their excess coverage by $1.75 million, then that's a present damage, and it can be remedied by reinstating that $1.75 million. So I'm candidly a little flummoxed at the assertion that this is all speculative. Well, because based upon the precedent that we see, such as the Jonestown case, which said that the fact that someone may be liable for future claims as yet unasserted is speculative and contingent and therefore not permissible. That's exactly what we have here. There are no current claims. Well, there is a current claim. They're making it against you. That's the current claim. Their claim is we had insurance in this amount, now we've got it in this amount, make them give it back to us. So why is this any different than a repudiation case? I put it to you again. I started to ask this question. If you just said we're not covering you, period, forget it, would you be able to say it's all speculative, who knows whether there would ever be a claim against you, or would they have a claim against you for breach of contract? No, I think they would have a claim against us for breach of contract, but we haven't. What's the distinguishing feature here? What's the distinguishing feature if you say we're not covering you at all, or we're covering you but not to the full amount? We're not covering you that extra $1.75 million. Because we are covering them, and we have covered them. But not to the full amount they say you owe them, and which that part may be in dispute down the road, but that's not what's in front of us now. The only question is speculative. Yeah, because that may never occur, and we don't know what that damage is going to be. Well, no, repudiation is repudiation. It happens at the time you repudiate. Well, what you're repudiating is the coverage, and you could say precisely the same thing, Mr. Hurd. You could say who knows if you'll ever get sued. You may never get sued, so you don't get anything. But we're not repudiating the coverage. We agreed to cover them. We are still covering them for the remainder. And you are saying we are not covering you for the full amount that we did before. Because we've exhausted it paying your claims, yes. There you go. Now we're back to the bad faith, which I thought was off the table. Just out of curiosity, what would it cost to buy the 1.75 million coverage in the marketplace? I don't know the answer. That's what this case is about. That's coverage, by the way, for conduct that occurred in 2011. It would have to be claims made, of course, insurance. And if it's very unlikely that there's anything that's going to happen, then that coverage should be pretty cheap. It's the last bit of the excess. Anyway, that's neither here nor there. Okay. Go on to the other point that I wanted to make. I mean, we have made the point in our brief that if the breach of contract claim fails, then obviously the bad faith claim and the vicarious liability claims fail because they require a predicate underlying cause of action. With respect to their breach, their ‑‑ You want to speak because you're running a little low on time. You want to talk about their constitutional claim, Mr. Hurd? Sure. It seems to me that what they're essentially arguing here is that there's two statutes that essentially put them in this dilemma. One is the MCARE statute that says that a minor can sue until age 20 for negligence that occurs during their minority. And the other is the statute of limitations for breach of contract. And so what they're saying is the statute of limitations for breach of contract may extinguish our claim against COVERAS before we even see a claim that's brought under the MCARE statute of limitations. So that's a contrast of those two statutes that causes their dilemma. They have not alleged that either of those statutes are unconstitutional. And I don't think you could. I think what they're alleging is if the law is what the district court says it is, then there's a violation of the state constitution because where there's a clear wrong, the constitution of the state of Pennsylvania says there must be a remedy. Isn't that the bottom line for their argument? It seems to be, although both the cases they cite, Yannikos and Maslow, are cases where they were statutes that allegedly deprived a plaintiff of a remedy and were declared unconstitutional. That's not what we have here. And what they seem to be arguing is that the trial court should alter the requirements for what is a breach of contract because there is a risk that at some point down the road they may be deprived of a remedy. And I don't think that's what those cases provide for. Well, thank you, Mr. Hurley. Thank you. Ms. Hadley, we'll hear you on rebuttal. Thank you, Your Honors. And I'll be very brief. There's just two points that I wanted to talk about. Counsel, could you walk me through? We've got a bad faith claim here and then a breach of contract claim. Your replenishment argument, your replenishment remedy is based upon your breach of contract claim? That's correct, Your Honor. And the breach of contract is because there was bad faith? The breach of contract is because, well, technically, yes, they had the duty to, and I'm sorry, I know I have it in here, to act in our best interest. So the bad faith, it does go hand in hand with the breach in not settling the underlying case to what we, and again, this is getting into the details of the case, but as we believe that they should have, and we essentially ask them repeatedly to do, and they would not entertain multiple discussions with co-counsel which resulted in this. But yes, essentially they do go hand in hand factually. Thank you. First and foremost, I just wanted to talk about what Attorney Hart said at the end of his argument, where he said that we're essentially trying to change what a breach of contract claim is, and that's not the case at all. What we're trying to do is make the court recognize that these aren't speculative damages. So we're only looking at the damage portion. We're certainly not trying to change in any way, shape, or form the elements or the requirements for a breach of contract claim, only whether or not these damages are speculative. But also Attorney Hart spoke to and focused a lot on the Jonestown case in his brief and just now mentioned a couple of times in his argument. And I just want to make the distinction, although I'm sure the court is aware, Jonestown had nothing to do with insurance. Jonestown was a case that had to do with potential sanctions from the DOJ based on failure to comply with ADA regulations. And actually as a remedy for punitive damages, not even compensatory, they asked for damages in the amount of what they can reasonably believe to come from a potential sanction from the DOJ for violations of those ADA regulations. That is not at all what we're dealing with here. It had nothing to do with insurance, which, Judge, as you mentioned before, is prospective in nature. It deals with future risk. There's going to be some element of it that has to depend to an extent on future events. That doesn't mean that the current loss is not an actual loss. Okay. Can I ask both counsel whether this case was, whether you engaged in the court's mediation services with Mr. Torregrosso or Ms. Allison? We did not, Your Honor. I heard it. We did not. You're talking about the Third Circuit mediation? Yes. I apologize. I apologize for misspeaking. You did. There was an effort. I was not part of it, but yes. All right. Do you think that, well, it just occurs to me that this is a business dispute, right? You ought to be talking to each other about this. And if you haven't fully explored that, you ought to think about exploring it further. But we appreciate counsel's argument. Grateful that you were in here to discuss this matter with us. We've got it under advisement, and we'll go ahead and recess the court. Thank you very much.